(101 App. Div. 125)

### HALSTED et al. v. PELLETREAU.

(Supreme Court, Appellate Division, Second Department. January 27, 1905.)

1. SALES—PROMISE TO PAY—CONSIDERATION.

　　Where defendant was interested in property on which a building was to be erected, as a broker, such interest, coupled with plaintiff's agreement to furnish the materials for the construction of the building, constituted ample consideration for defendant's engagement to pay for such materials.

2. SAME—STATUTE OF FRAUDS—DEBT OF ANOTHER—PROMISE TO PAY—EVIDENCE.

　　In an action for the price of materials, evidence held to establish a mere void oral engagement on defendant's part to answer for the debt of another, within the statute of frauds, and not an original obligation.

Appeal from Municipal Court of City of New York.

Action by John M. Halsted and another against Vennette F. Pelletreau. From a Municipal Court judgment in favor of plaintiffs, defendant appeals. Reversed.

Argued before HIRSCHBERG, P. J., and BARTLETT, WOODWARD, and HOOKER, JJ.

Van Mater Stilwell, for appellant.
George D. Beattys, for respondents.

HIRSCHBERG, P. J. The pleadings were oral. The plaintiffs sued for the purchase price of lumber sold and delivered. The answer was a general denial, and a claim that the oral agreement on which the plaintiffs sought to hold the defendant liable was void under the statute of frauds. At the time of the making of the agreement the plaintiffs had been asked by Richard Mullowney to furnish him some lumber for the building of a house, which they refused to do because of doubts as to his financial responsibility. Thereafter an interview was had between the defendant and one of the plaintiffs, in the course of which it is claimed that the defendant became personally liable for the lumber on an original undertaking to pay for it himself. The lumber was afterwards furnished by the plaintiffs, and charged to Frederick C. Mullowney, the owner of the real estate, at the defendant's request or suggestion; and, on failure of payment by said Frederick C. Mullowney, the plaintiffs have recovered judgment against the defendant for the purchase price.

The case was submitted to the jury upon the theory that the defendant could only be held in the event that the jury should find that he had agreed to pay for the lumber. The verdict must be assumed to be based upon the finding of such an agreement, but I think that the evidence fails to establish such an agreement by a fair preponderance of proof. I do not agree, however, with the contention of the appellant

that, had the defendant made an absolute agreement to pay, it would have been void for want of consideration. The defendant's connection with the property as broker, coupled with the agreement to furnish the materials on the plaintiffs' part, would have constituted ample consideration to support the defendant's engagement to pay, had such engagement been established. See Mannetti v. Doege, 48 App. Div. 567, 62 N. Y. Supp. 918, and cases cited.

But the whole proof indicates an oral agreement on the part of the defendant only to pay in Mullowney's default, and that such was the plaintiffs' understanding of the transaction. This is clearly indicated by the evidence of the plaintiff John M. Halsted, with whom the agreement was made. He testified:

"Mr. Pelletreau said, 'I want you to sell this lumber, and, if you will furnish the material for this house, I will see you paid. * * * Q. Finally did you agree? A. Oh, we agreed to furnish it on Mr. Pelletreau's word that he would see us paid. Q. Did Mr. Pelletreau say anything to you to whom you were to charge the bill? A. Yes; he said Mr. Frederick C. Mullowney, the brother of Richard Mullowney, as the title owner of this property—of this lot that is going to be built upon—'I want you to charge this lumber to Frederick C. Mullowney.' * * * Q. And in whose name was it to be charged? A. This lumber was to be charged in the name of Frederick C. Mullowney. Q. Did you say anything to your clerk about any other name? A. I told him at the time we came back from having the interview with Mr. Pelletreau and Mr. Mullowney in Mr. Pelletreau's office that this lumber was to be charged to Frederick C. Mullowney and Richard Mullowney, and vouched for by Pelletreau. Q. That is the defendant? A. Yes. * * * Q. Who did you furnish this material to? A. I furnished it to Richard Mullowney, because Mr. Pelletreau said that he would see that we were paid. * * * Q. What were the facts? A. Why, Mr. Pelletreau said, 'I want you to furnish the material for this building to Mr. Richard Mullowney, and the title owner is Frederick C. Mullowney, his brother; and you charge it to Frederick C. Mullowney, and I will see you paid.'"

Nowhere in the evidence on behalf of the plaintiffs is there to be found a promise on the part of the defendant to pay for the lumber himself, but only to see that it was paid if delivered and charged as requested. The evidence is at least as consistent with an engagement to pay only in the event that the Mullowneys failed to do so, as it is with an original engagement to pay absolutely and in the first instance.

As I have said, the plaintiffs' understanding appears to have been that the sale was made to the Mullowneys on the defendant's agreement to answer for their default (that is on the defendant's assurance or guaranty that they would pay, and that he would do so if they did not)—a contract which is clearly within the statute of frauds. This is indicated by the correspondence between the parties. After all the lumber was delivered, the plaintiffs wrote to the defendant as follows:

"We would never have sold Mr. F. C. Mullowney but for your assurance to us that we would surely get our money on the Willoughby St. house. We never knew the Mullowneys until you introduced us to Mr. R. M. in your office. We were there on other matters, but you told us that you would see that we were paid. Will you still live up to what you told us, for it was on your assurance to us that we sold them, and we supposed we were perfectly safe with this."

I do not mean to assert that the mere use of the word "see," in making the promise, is controlling—that is, that a promise to see a person paid may not be equivalent to a promise to pay him—but only that is

this instance the whole tenor of the transaction and the language employed indicate a collateral promise to pay the debt of another, as much as, if not rather than, a direct promise to pay one's own debt. The leading case of Raabe v. Squier, 148 N. Y. 81, 42 N. E. 516, differs from this one, in that the promise there was on the part of the owner to withhold money due to the builder in case he failed to pay the materialman, and to use such money in the payment for the materials.

The judgment must accordingly be reversed.

Judgment reversed and new trial ordered; costs to abide the event. All concur.